IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Crim. No. 4:16-CR-00057 |
| | : | |
| v. | : | (Judge Brann) |
| | : | |
| ALONZO OWENS, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM**
May 16, 2016

## I. INTRODUCTION

On March 10, 2016, Defendant Alonzo Owens was charged under Count

One with Possession with Intent to Distribute a Controlled Substance in violation

of 21 U.S.C. § 841(a)(1), under Count Two with Possession of a Firearm by a

Prohibited Person in violation of 18 U.S.C. § 922(g), under Count Three with

Possession of a Firearm in Furtherance of a Drug Trafficking Crime in violation of

18 U.S.C. § 924(c)(1)(A), under Count Four with Possession with Intent to

Distribute a Controlled Substance in violation of 21 U.S.C. § 841(a)(1) and

requested Criminal Forfeiture in accordance with 21 U.S.C. § 853. Counts One,

Two, and Three charge Mr. Owens with possession of items obtained as a result of

a warrantless search of a residence located at 937 Hepburn Street, Williamsport,

Pennsylvania on December 23, 2014. Count Four charges Mr. Owens with

possession of drugs obtained as a result of a vehicle stop conducted by the

1

Pennsylvania State Police along Interstate 80 in Carbon County, Pennsylvania on January 25, 2016.

Pending before the Court are three motions filed by Mr. Owens, through his counsel. Mr. Owens' first motion seeks to suppress evidence obtained from the vehicle stop on January 25, 2016.[1] Mr. Owens' second motion seeks to suppress evidence obtained from the search of 937 Hepburn Street.[2] Mr. Owens' third motion seeks to sever Count Four from Counts One, Two, and Three.[3] In accordance with the following analysis, Mr. Owens' motions to suppress are both denied and his motion to sever is granted.

## II. BACKGROUND

*December 23, 2014 Incident*

On December 23, 2014, members of the Lycoming County Probation and Parole Office and detectives from the Lycoming County District Attorney's Office reported to 937 Hepburn Street, Williamsport, Pennsylvania, to check on the status of Mr. Owens, who was on county probation for Driving Under the Influence. Upon arriving at this residence, Kianah Abdul Haqq, later identified as Mr. Owens' live-in girlfriend, answered the door and stated that she thought that Mr. Owens was not home and that she and her young daughter were alone in the residence.

---

[1] ECF No. 22.
[2] ECF No. 24.
[3] ECF No. 26.

The officers indicated that they wanted to see Mr. Owens' room and Ms. Haqq allowed them to enter the residence.

As officers ascended the stairs to the second floor, they discovered another occupant, Hakim Hopkins, who was told to go downstairs and sit on the sofa. The officers then discovered Mr. Owens walking down the second floor hallway, coming from the direction of the attic stairs. Officers escorted Mr. Owens downstairs and then continued to search the upstairs of the residence. As they were searching, the officers detected the odor of burnt marijuana and saw a marijuana bong in plain view in one of the bedrooms. After a tour of the attic, officers found handgun rounds and money lying on the floor near a wall that divided 937 Hepburn Street, Mr. Owens' residence, from 939 Hepburn Street (a duplex). The wall did not extend all the way to the ceiling and had a large hole in it. On the other side of the wall, in 939 Hepburn Street, officers observed additional twenty-dollar bills on the floor.

Officers then proceeded to 939 Hepburn Street where they met the owner of both properties, identified as T.W., who consented to a search of the entire duplex, including 939 Hepburn Street. In the attic, above T.W.'s residence, near the wall with the hole, officers found twenty-dollar bills scattered on the floor, a .357 handgun, a black plastic bag with heroin packets spilling out of it, and a canvas bag containing heroin. T.W. denied any knowledge of the items. The officers

3

ultimately recovered twenty-four grams of heroin, sixteen grams of crack cocaine, a quarter pound of marijuana, and approximately $7,000. After obtaining a search warrant for 937 Hepburn Street (the Owens residence), officers recovered additional currency, packaging materials, cell phones, rubber bands, a digital scale, indicia of ownership, and additional ammunition.

*January 25, 2016 Incident*

At 8:37 p.m. on January 25, 2016, the Pennsylvania State Police conducted a traffic stop of a vehicle on Interstate 80 in Kidder Township, Carbon County, Pennsylvania. The occupants of the vehicle were identified as Monique Taylor, the driver, Mr. Owens, who was seated in the front passenger seat, and Londell Murray-Bey, who was seated in the back seat together with a young child. Ms. Taylor was asked to exit the vehicle by a trooper and was told, upon inquiry, that she was stopped because the windows of her vehicle were illegally tinted. Ms. Taylor protested that the windows were original to the car but the trooper explained that her windows were darker than any other vehicle that passed his position and that he could not see inside the car. Ms. Taylor explained that she lived in Williamsport and was returning home after having been in Philadelphia to pick up Mr. Murray-Bey's child (the young child in the back seat). She indicated that she did not know Mr. Murray-Bey's actual name but only knew him as "Whiz." She also explained that Mr. Owens was her cousin.

4

Case 4:16-cr-00057-MWB   Document 37   Filed 05/16/16   Page 5 of 17

During the stop, the trooper ran a criminal history check on Ms. Taylor and found that she had a history of felony drug convictions. The trooper subsequently asked Ms. Taylor for her consent to search her vehicle. She reluctantly agreed.[4] Multiple troopers then searched the car, recovering a Clorox bottle with a hidden compartment from the trunk. Inside the bottle was a bag with 280 grams of heroin. All motorists in question were taken to the State Police Barracks in Fern Ridge, Pennsylvania. While at the barracks, Mr. Owens claimed the heroin as his own and stated that he traveled from Williamsport to Philadelphia to pick up the heroin and return it to Williamsport for delivery to a person he knew as "Mujahid."

## III. DISCUSSION

### A. Motion to Suppress Evidence Obtained at 937 Hepburn Street

Mr. Owens contends that the search of 937 Hepburn Street was illegal and seeks suppression of the evidence obtained from the search. He argues that the county probation officers lacked reasonable suspicion to search the area without a warrant. Specifically, he argues that the probation officers and police officers lacked any reasonable suspicion to believe that contraband or evidence of other violations of Mr. Owens' supervision existed when they entered the residence. He

---

[4] The parties relay different accounts. The government indicates that Ms. Taylor asked what would happen if she said "no" to the search and that the trooper began to state that he would bring a canine drug-detention unit to the scene and Ms. Taylor "waived him off" and consented to the search. Mr. Owens indicates that Ms. Taylor agreed to the search reluctantly, after the threat of detention while a search warrant was sought.

5

contends that once Mr. Owens was found, without the existence of reasonable suspicion, there was no reason to continue a warrantless search of the residence.

The government, on the other hand, argues that the officers had probable cause to conduct a protective sweep of the house after they discovered that they were misled about the presence of others in the residence. They further argue that Mr. Owens lacks standing to challenge the search of 939 Hepburn Street, which yielded a substantial amount of heroin, a handgun, and currency, because he has no reasonable expectation of privacy in a residence where he did not reside.

"A probationer's home, like anyone else's, is protected by the Fourth Amendment's requirement that searches be 'reasonable.'"[5] Probationers, however, "do not enjoy 'the absolute liberty to which every citizen is entitled, but only ... conditional liberty properly dependent on observance of special [probation] restrictions.'"[6] By virtue of a probationer's status, the law affords the state a "degree of infringement upon privacy that would not be constitutional if applied to the public at large."[7]

For example, the warrant requirement has been found by the United States Supreme Court to "interfere with the probation system by delaying investigations into suspected violations and effectively establishing a magistrate, rather than a

---

[5] *Griffin v. Wisconsin*, 483 U.S. 868, 873 (1987).
[6] *Id.* at 874 (citing *Morrissey v. Brewer,* 408 U.S. 471, 480 (1972)).
[7] *Id.* at 875.

probation officer, as the probationer's supervisor."[8] The probable cause

requirement has also been found to "unduly disrupt the probation regime by

restricting a probation officer's ability to supervise a probationer."[9]

Because of this, the United States Court of Appeals for the Third Circuit has

determined that, in Pennsylvania, parole officers may conduct warrantless search

of a parolee's property based on reasonable suspicion.[10] Specifically, a warrantless

search of a parolee's property is authorized "if there is reasonable suspicion to

believe that the real or other property in the possession of or under the control of

the offender contains contraband or other evidence of violations of the conditions

of supervision."[11] Whether reasonable suspicion exists depends on whether the

totality of the circumstances supports a finding that the officer had a

"particularized and objective basis for suspecting legal wrongdoing."[12]

The Fourth Amendment of the United States Constitution permits limited

protective sweeps when the searching officer "possesses reasonable belief based on

specific and articulable facts that the area to be swept harbors" individuals posing a

danger to the officer.[13] A protective sweep, however, is "not a full search of the

premises" and is limited "to a cursory inspection of those spaces where a person

---

[8] *Id.* at 876.
[9] *Id.* at 878-79.
[10] *U.S. v. Strickland*, 237 Fed. Appx. 773, 777 (3d Cir. 2007).
[11] *Id. citing* 61 Pa. Cons. Stat. Ann. § 331.27b(d)(2).
[12] *Id. citing United States v. Williams*, 417 F.3d 373, 376 (3d Cir. 2005).
[13] *Maryland v. Buie*, 494 U.S. 325, 334 (1990).

may be found."[14] Lastly, the search may last "no longer than is necessary to dispel the reasonable suspicion of danger . . ."[15]

In the case at bar, officers went to Mr. Owens' residence to conduct a probationary check. After knocking on the door, officers were told by Mr. Owens' girlfriend, Ms. Haqq, that he was not present and that she was the only adult at the residence. Officers then stated that they wished to see Mr. Owens' room and Ms. Haqq, who also resided at 937 Hepburn Street, consented to the officers entering the home.[16]

Once they lawfully gained access, officers entered, expecting no other adults in the home. When the officers encountered two other adults, including Mr. Owens, they naturally performed a protective sweep. The fact that Ms. Haqq was either untruthful or unaware that there were others in the home led the officers to conclude that other individuals who may pose a danger to the officers may be present. Accordingly, the officers' search of the property was lawful and not in violation of the Fourth Amendment.[17] Mr. Owens' motion to suppress the evidence obtained as a result of the search of 937 Hepburn Avenue is therefore denied.

---

[14] *Id.*

[15] *Id.*

[16] It is significant to note that had Ms. Haqq not consented to the officers coming in to search Mr. Owens' room, the officers would not have had reasonable suspicion of illegal activity to justify a warrantless search from the facts presented in the parties' briefs.

[17] While Mr. Owens does not address this in his motion, the government is correct in stating that Mr. Owens does not have standing to challenge the search of 939 Hepburn Street as he does not reside there and consent was given to the officers to search the home by the owner and resident. *See Rakas v. Illinois*, 439 U.S. 128, 134 (1978) (an individual "who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence

## B. Motion to Suppress Evidence Obtained During the Vehicle Stop

Mr. Owens also seeks suppression of the heroin found in the Clorox bottle in the trunk of Ms. Taylor's car, discovered during the traffic stop on January 25, 2016. He argues that the trooper who stopped Ms. Taylor's car lacked a particularized and objective basis for suspecting criminal activity, resulting in an illegal traffic stop. He specifically argues that the trooper's basis for stopping the vehicle—that the windows of the car were darker than any other vehicle that passed and that he could not see inside of the vehicle—was insufficient to justify a stop which occurred close to 9:00 p.m. on winter night. He states that it was completely dark at the time of the stop, all surrounding vehicles had their headlights on, and the stop occurred in an area of Interstate 80 where there are few, if any, overhead lights. Consequently, Mr. Owens argues that there was no objective, reasonable basis justifying the stop which resulted in Ms. Taylor being removed from her vehicle and the troopers searching the car.

The government contends that Mr. Owens lacks standing to challenge the search of Ms. Taylor's vehicle. It further argues that the consent to search the vehicle was freely given by the owner and operator of the vehicle after a traffic stop grounded in reasonable suspicion that a motor vehicle code violation prohibiting excessive window tint had occurred (75 Pa. C.S. 4524(e)(1)).

---

secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed.")

9

"Fourth Amendment rights are personal rights which . . . may not be vicariously asserted."[18] The United States Supreme Court has held that a person who is aggrieved by an illegal search and seizure . . . of a third person's premises or property has not had any of his Fourth Amendment rights infringed."[19] Only those who have had their Fourth Amendment rights infringed may challenge a search under the Fourth Amendment.[20] This Court need not determine whether the traffic stop was properly grounded in reasonable suspicion. Mr. Owens simply does not have standing to challenge the search of Ms. Taylor's vehicle. Ms. Taylor was the owner and operator of the vehicle searched. If the search was illegal, it was Ms. Taylor's Fourth Amendment rights that were infringed. Whether the search of the vehicle was legal under the Fourth Amendment is a challenge exclusive to Ms. Taylor. Accordingly, Mr. Owens' motion to suppress the evidence obtained as a result of the traffic stop is also denied.

## C. Motion to Sever Count Four from Counts One, Two, and Three

Mr. Owens seeks the severance of Counts One, Two, and Three from Count Four. He avers that the first three counts have been misjoined with the charges in Count Four because that count is different in character; is not based on the same

---

[18] *Rakas*, 439 U.S. at 425 (*citing Brown v. United States*, 411 U.S. 223, 230 (1973); *Simmons v. United States*, 390 U.S. 377, 389 (1968); *Wong Sun v. United States*, 371 U.S. 471, 492 (1963); cf. *Silverman v. United States*, 365 U.S. 505, 511 (1961); *Gouled v. United States*, 255 U.S. 298, 304 (1921)).
[19] *Id.* at 425.
[20] *Id.*

act or transaction as Counts One through Three; and is not connected to Counts One through Three and the Counts are in no way part of a common scheme or plan.

Mr. Owens further requests that, even if this Court finds joinder proper, the Counts be severed pursuant to Rule 14.[21] He contends that keeping the counts together will create a substantial risk of prejudice if the same jury is to hear allegations relating to both incidents because it will increase the chances that he will be convicted of both offenses.

The government, on the other hand, argues that all four Counts relate to Mr. Owens' ongoing drug trafficking activities; they are all of the same or similar character; and that the charges should be joined to promote judicial economy.[22] The government further cites a United States Court of Appeals for the Seventh Circuit case in support of its contention that the charges are properly joined.

## A. Joinder Under Rule 8

Rule 8 provides that a defendant may be charged in separate counts with more than one offense if the offenses charged "are of the same or similar character, or a based on the same act or transaction, or are connected with or constitute parts

---

[21] Rule 14 provides that "[i]f the joinder of offenses . . . appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trial, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a).

[22] The government's argument that Mr. Owens' "criminal conduct in drug trafficking in the Middle District of Pennsylvania spans a timeframe over the course of a year" is unpersuasive. While this may well be true, this Court has only been provided with information of two instances of drug activity: the search of 937 Hepburn Street and the search of the vehicle. That the two incidents occurred over a year apart does not justify classifying the allegations as conduct spanning the course of a year.

of a common scheme or plan."[23] In other words, it requires a "transactional nexus" between the joined offenses.[24] "The movant carries the burden of establishing improper joinder of offenses."[25] In deciding whether charges have been misjoined, the Third Circuit has instructed courts to consider the indictment primarily and may look beyond the indictment only in limited circumstances to clarify the connection between the counts.[26]

In the case at hand, the indictment charges Mr. Owens with four counts. The two relevant counts to the motion to sever are both Possession with Intent to Distribute a Controlled Substance charges, one regarding the search of 937 Hepburn Street (Count One) and on regarding the search of the vehicle after the traffic stop (Count Four).

I begin my analysis with *United States v. Coleman*,[27] the Seventh Circuit case cited by the government. In *Coleman*, the defendant was charged and convicted of four counts of being a felon in possession of a firearm.[28] Each possession count occurred on four separate incidents, one in 1990 and three others more than twenty-one months later, in 1992.[29] The defendant argued that the charged offenses, while of identical type, were not in any way connected

---

[23] Fed. R. Crim. P. 8(a).
[24] *U.S. v. Sanchez*, 2015 WL 1322260, *1 (M.D. Pa. March 24, 2015).
[25] *Id.* (*citing United States v. Avila,* 610 F.Supp.2d 391, 394 (M.D. Pa. 2009)).
[26] *U.S. v. McGill*, 964 F.2d 222, 242 (3d Cir. 1992).
[27] 22 F.3d 126 (7th Cir. 1994).
[28] *Id.* at 128.
[29] *Id.*

12

temporally or evidentially.[30] The Seventh Circuit, in great detail, explained that temporal and evidentiary connectivity (or the "short-period-of-time/evidence-overlap formula") should be used as a guide to joinder of offenses that form a common plan or scheme, not to offenses that are of same or similar character.[31] Instead, it found that the language in Rule 8(a) is a "clear directive to compare the offenses charged for categorical, not evidentiary, similarities."[32]

The United States Court of Appeals for the First Circuit, on the other hand, has approached the "same or similar character" analysis on the other end of the spectrum, holding that "mere similarity of acts, without more, cannot justify joinder."[33] Similarly, the United States Court of Appeals for the Ninth Circuit applies a more "comprehensive review" of the evidence and refuses to adopt the "Seventh Circuit's 'categorical' approach" that "wholly ignores factors relevant to the question of similarity, such as temporal proximity, physical location, modes of operation, identity of the victims, likelihood of evidentiary overlap," and other

---

[30] *Id.* at 131.
[31] *Id.* at 132-3.
[32] *Id.* at 134.
[33] *U.S. v. Natanel*, 938 F.2d 3001, 307 (1st Cir. 1991); *but see U.S. v. Melendez*, 301 F.3d 27, 35 (1st Cir. 2002)(found that charges involving incidents separated by two years were properly joined because they both were charges of possession of a controlled substance with the intent to distribute and because the controlled substance at issue was cocaine base.)

considerations.[34] The Third Circuit has yet to speak on the matter.[35] Pennsylvania

District Courts, however, have applied the Seventh Circuit's approach.[36]

In joining my sister courts in applying the Seventh Circuit's *Coleman*

approach, I find that the counts are properly joined. Mr. Owens has been charged

with identical counts of Possession with Intent to Distribute in both instances.

Heroin was the substance underlying both charges. Regardless of the lack of

temporal or evidentiary connectedness, the counts are properly joined under Rule

8(a).

## B. Discretionary Severance Under Rule 14

Especially relevant to the case at hand, the Seventh Circuit went on to

explain in *Coleman* that because of the broad nature of Rule 8, courts must be

vigilant of prejudice. It states:

> Because Rule 8 does represent a strong preference, in language and
> policy, for broadly construing the propriety of joinder as an initial
> matter, district courts must not shirk their duties under Rule 14. They
> should vigilantly monitor for developing unfairness and should not
> hesitate to order severance at any point after indictment if the risk of
> real prejudice grows too large to justify whatever efficiencies a joint
> trial does provide . . . Indeed, when offenses are joined because of
> their "same or similar character," the risk of unnecessary unfairness
> infiltrating the joint trial is elevated. Unlike instances of joinder of
> offenses based on the same or closely connected acts or transactions,

---

[34] *U.S. v. Jawara*, 474 F.3d 565, 577-8 (9th Cir. 2006).
[35] The Third Circuit does cite to *Coleman* in *U.S. v. Torres*, 251 Fed. Appx. 763, 764 (3d Cir. 2007). *Torres*, however, does not deal with a "same or similar character" analysis but a "common scheme or plan" analysis.
[36] *See U.S. v. Giles*, 2016 WL 47881, *4 (W.D. Pa. January 4, 2016)(citing *Coleman* in finding that the charged offenses were properly joined "regardless of any temporal or evidentiary dissimilarity between the two"); *see also U.S. v. Harris*, 2013 WL 626971, *2 (W.D. Pa. February 20, 2013); *U.S. v. Watson*, 2010 WL 1924474, *9 (E.D. Pa. May 6, 2010)(provides review of Pennsylvania cases in which joinder was proper under this analysis).

there is no comparable saving of trial time when offenses that are related only by being of the same type are joined, since the offenses are usually proven by different bodies of evidence and, when totally unrelated, similar offenses are joined, defendant faces a considerable risk of prejudice. In such cases, the district courts should be especially watchful for possible jury confusion, illegitimate cumulation of evidence or other sources of prejudice not worth the reduced efficiency gains of a joint trial.[37]

Rule 14 permits severance of offenses, even if properly joined, if the joinder "appears to prejudice a defendant."[38]  Whether to sever is a determination within the sound discretion of the trial judge.[39]  In making the determination, the trial judge must consider what trial developments are foreseeable at the time the motion to sever is made.[40] Even if a judge is found to have abused his or her discretion in denying a motion to sever, a conviction will not be overturned unless the appellant meets the "heavy burden" of demonstrating "clear and substantial prejudice resulting in a manifestly unfair trial."[41]

I find that Counts One through Three should be severed from Count Four. The search of the home and the search of the vehicle occurred over a year apart. The persons present during the search of the residence were not involved in the search of the vehicle and the persons in the vehicle are un-connected to the residence. The searches share no common witnesses. There is no allegation that the

---

[37] *Coleman*, 22 F.3d at 134 (internal quotations omitted).
[38] Fed. R. Crim. P. 14(a).
[39] *U.S. v. Reicherter*, 647 F.2d 397, 400 (3d Cir. 1981)
[40] *U.S. v. Eufrasio*, 935 F.2d 553, 568 (3d Cir. 1991).
[41] *Id.* at 568.

substances found during the vehicle search were associated or even packaged similarly to the substances found in the residence. The evidence presented at trial on Counts One, Two, and Three will not be the same evidence as the evidence presented on Count Four. Because there is no comparable saving of trial time in this case, the risk of prejudice outweighs the gains of a joint trial.

Here, the risk of prejudice is substantial. While Counts One and Four are identical charges of Possession with Intent to Distribute, the circumstances surrounding the charges are substantially different. The substances recovered during the search of the residence may indicate to a jury that Mr. Owens sold and distributed drugs. Mr. Owens was in a vehicle on an interstate travelling from Philadelphia to Williamsport when drugs were discovered after the search of the car. This evidence may indicate to a jury that Mr. Owens is engaged in the *trafficking* of drugs. While this may well be the case, it is the burden of the government to prove at trial that Mr. Owens was engaged in the trafficking of the drugs found in his residence. There is substantial risk that a jury could inappropriately attribute evidence supporting Count Four to the counts resulting from the search of the home, particularly Count Three of Possessing a Firearm in Furtherance of a Drug Trafficking Crime. Accordingly, Count Four is severed from Counts One, Two, and Three.

**IV. CONCLUSION**

In accordance with the foregoing reasoning, Mr. Owens' motions to suppress are both denied. Mr. Owens' motion to sever is granted.

BY THE COURT:


s/ Matthew W. Brann
Matthew W. Brann
United States District Judge